# THE FORT WAYNE ELECTRIC CORPORATION

## *v.*

# THE FRANKLIN ELECTRIC LIGHT COMPANY.

### [Filed October 27th, 1898.]

1. Where a party desires to question a decree which has not been enrolled, upon new facts, the establishment of which depends upon conflicting proofs and inferences, he should apply to the court for leave to file a bill in the nature of a bill of review, upon proof that the new matter could not, by reasonable diligence, be produced or used by him in the original cause.

2. He will be held to this practice where the decree binds and benefits a class the members of which are not all before the court, so that the court, in according the leave sought, may impose terms as to their notification of the proceeding.

3. That one creditor of an insolvent corporation, not about to resume its business with safety to the public and advantage to its stockholders, institutes proceedings to have the insolvency, &c., adjudged and a receiver appointed, with ulterior purpose of self-advantage, will not defeat the proceedings.

4. One who holds the legal title to, and a beneficial interest in, a debt due from an insolvent corporation is a creditor within the meaning of the statute, capable of instituting and prosecuting proceedings in insolvency.

---

On petition and affidavits seeking to set aside a decree of insolvency, and affidavits in reply.

*Mr. Robert H. McCarter*, for the petitioner.

*Mr. Samuel H. Grey*, for Thomas and William Oscar Robb.

*Mr. David J. Pancoast*, for the complainant.

THE CHANCELLOR.

The petition alleges as new facts, first, that when the bill was filed and the decree was made the complainant was not a creditor of the defendant because of a previous assignment of its

claim, and second, that its assignee purchased the claim with motive to so prosecute the same as to compass the ruin of the defendant and acquire for itself the defendant's electric light plant. At the same time it attacks the personnel of the receiver appointed by the decree. Its prayer is

"that the order adjudging your petitioner insolvent and appointing said Joseph Q. Williams receiver thereof may be annulled, set aside and for nothing holden, and that said Joseph Q. Williams may be restrained from further acting or assuming to act as receiver of your petitioner, and that the bill of complaint whereon said order was founded may be dismissed, with costs,".

and that other relief may be given the petitioner as may be agreeable to equity.

As the decree is not yet enrolled the immediate office of the petition should have been to obtain leave to the defendant to file a bill in the nature of a bill of review. The necessity of pursuing the regular practice in this case is emphasized when it is remembered that the decree, if valid, binds all creditors as a class, and that the class should have an opportunity to be heard before the decree is lost, upon such terms as the leave to file the bill desired may prescribe.

The representation is that the defendant has just discovered that on the 10th of August, 1897, the complainant assigned its claim to the Cape Island Gas Company, a rival of the defendant, for the sum of $8,500, represented by twenty-four notes of $354.17 each, six payable in one year, six payable in sixteen months, six payable in twenty months and six payable in two years from that date, each note being endorsed by one of the six stockholders of the Cape Island Gas Company, and upon this representation and other evidential circumstances alleged, it infers and charges that the said six stockholders purchased and hold the claim for the purpose of acquiring the defendant's plant or ruining it.

The bill in this case was filed on the 27th of June, 1898, and the petition now considered was filed on the 23d of September, 1898, about a week after the decree attacked was made. In support of the petition's allegation that the assignment of the

complainant's claim was recently discovered, two affidavits are annexed to the petition, one by Thomas Robb and the other by Logan M. Bullitt. The first-named affiant states that in the spring of 1898 one John Henry Edmunds, who is one of the six stockholders of the Cape Island Gas Company and an endorser of several of the notes above mentioned, told him, Thomas Robb, that he, Edmunds, with others, had purchased the claim of the complainant against the defendant and had given notes therefor, and that he and those others were then the owners of the claim, and that it was understood that all litigation in reference to the claim was to be conducted in the complainant's name for the use of the purchasers of the claim. Mr. Bullitt's affidavit is quite general and indefinite; but, as I understand him, his suspicions as to an assignment of the complainant's claim were in some way aroused in June, 1898, but it was not until the 20th of August last, after the hearing herein, that a newspaper article led him to an investigation that apprised him of the assignment.

It is remembered that there are five directors of the defendant, one of whom is an employe of Mr. Bullitt and another is Mr. Bullitt himself, and that they two have lately managed the affairs of the company under the virtual protection of Thomas Robb and his brother, William Oscar Robb, to the practical exclusion of the other three directors, and that the protection of the Bullitt management by Robb is shown by these circumstances. In July, 1893, the defendant mortgaged its realty, plant and chattels existing and to be acquired in the future to Thomas Robb, to secure the payment of upwards of $13,500 and two mortgages were taken that were later assigned by Thomas Robb to William Oscar Robb. In June, 1896, two judgments were recovered by one Warren against the defendant, aggregating upwards of $1,700. In December, 1897, another judgment was recovered by one Tunis against the defendant for upwards of $2,000. Thomas Robb purchased the Warren and Tunis judgments and had them assigned to his attorney-at-law for his (Robb's) use and benefit, and caused executions to be issued on them and levies on the property of the defendant to be made. A

portion of the defendant's plant is erected upon land which now belongs to William Oscar Robb. The judgments and mortgages with arrears of interest upon them have lately been held capable of immediate enforcement, in threatening attitude, as the complainant's efforts to collect its judgment of upwards of $12,000 progressed, and it was not until the court had announced that the decree herein would be made that the Robbs gave instructions for the actual enforcement of their encumbrances.

It is also remembered that the complainant's claim is for the erection of a large portion of the machinery of the defendant's plant, which, so far as the title may have gone to the defendant, is now subject to the mortgages stated, because, in terms, they cover future-acquired property.

Now, all these circumstances—reference to prior affidavits in the cause and the fact that Thomas Robb participates in the present application by his affidavit annexed to the petition—most strongly tend to justify the conclusion that Thomas Robb is in sympathy with and in protection of the Bullitt management of the defendant corporation. As has been seen, he admits that, before the bill in this case was filed he had been told of the assignment of the complainant's claim to the Cape Island Gas Company, and it seems to me hardly probable that he did not communicate the information he had received to Mr. Bullitt.

It may be possible that that very communication was the means by which Mr. Bullitt's suspicions were aroused in June, 1898, at about the time of the filing of the bill. However that may be, I am not satisfied that what is called the assignment of the complainant's claim was not known to the defendant throughout the entire controversy under the present bill, or at least so far known as to invite an inquiry which, pursued with reasonable diligence, would have brought the assignment to light in ample time to have enabled the defendant to urge it at the hearing had herein. It is well settled that a bill of review, because of the discovery of new matter, cannot be filed without leave of the court first had upon proof that it could not, by the use of reasonable diligence, be produced or used in the original

cause by the party claiming the benefit of it.   *Story Eq. Pl.* §§ *412, 414.*

Passing to the second insistence for the defendant, that the motive of the Cape Island Gas Company in purchasing the claim of the Fort Wayne Company, is to ruin the defendant and acquire its plant, and that the Fort Wayne Company is subserviently prosecuting this suit to that end, I find that Mr. Burleigh swears that the step taken to purchase the Fort Wayne Company's claim was for the purpose of making money, the object being to buy it for one-half of its face value and collect the whole of it, and was not to ruin the defendant or to gain possession of its plant.

It is perceived that both the questions of fact commented on, namely, whether the alleged assignment of the complainant. should have been put in proof before the decree was made and whether the bill was filed with bad motive on the part of the complainant, are yet so far open and unsettled that, if I stop at this point, my action must be to grant leave to file a bill that, upon issues framed, proofs may be taken.

But my further consideration of this application determines me not to adopt that course.   The newly-discovered matter, to justify leave to file a bill of review, must appear to be decisive of the controversy or to present a case of so much nicety or difficulty as to be the fit subject of a judgment in the cause.   *Quick* v. *Lilly, 2 Gr. Ch. 255; Traphagen* v. *Voorhees, 18 Stew. Eq. 44.*

Assuming that the purpose of the Cape Island Gas Company was to crush its rival and succeed to its plant, would that motive, if known, justify the refusal of the present decree?   The court is satisfied of the defendant's insolvency, and that the defendant is not within a short time about to resume its business with safety to the public and advantage to its stockholders.   The bill was not presented for the speculative gas company alone.   Its object was to assist the complainant in the recovery of the amounts due upon the notes it took for an assignment of its claim and as well to benefit the creditors of the defendant as a class, and it clearly appears that there are members of that class

other than the Fort Wayne Company and the Cape Island Gas Company. All of that class, as I have said, are bound by the decree and are interested in upholding it. *Willoughby* v. *Chicago Junction Railway, &c., Co., 5 Dick. Ch. Rep. 656.*

The proceeding here involved does not invoke the exercise of judicial discretion. It demands a remedy to be administered upon prescribed conditions to be ascertained from evidence. It is more nearly like the case of *Davis* v. *Flagg, 8 Stew. Eq. 491,* where the foreclosure of a mortgage was sought with intent to oppress, than the case of *Bray* v. *Ocean City Railroad Co., 10 Dick. Ch. Rep. 101,* where an injunction was asked to stay a taking of lands in advance of condemnation by one who deliberately purchased the land for the purpose of impeding by litigation the building of a railway in interest of a rival road. It is true that completion of the remedy involves the issuance of an injunction, but such injunction is expressly contemplated and authorized by the statute as an incident to the efficient enforcement of the remedy. In such case as this, bad motive in the complainant will not defeat the relief. At best it will arouse a suspicious scrutiny of the proofs as to the existence of the conditions upon which the remedy is given. If a sufficient case clearly appears, the right of a complainant acting with bad motive whatever it may be, and the rights of all others of the classes affected and of the defendant, will be brought into and bound by a common administration which will conserve rather than ruthlessly destroy the assets of the defendant, to the end that they may be most profitably disposed of or may be restored to the defendant if it shall duly become rehabilitated in strength and returned to self-control. The complainant in such a proceeding merely invokes a public administration for the benefit of creditors, stockholders and the public, and, a proper case being made, the fact that he took the initiative with bad motive will not stay the court in the performance of so public a duty.

But I think that the Fort Wayne Electric Corporation, notwithstanding that which it has done, is yet to be classed as a creditor of the defendant. It is disclosed that on the 12th of August, 1897, it took from the Cape Island Gas Company twenty-four notes and gave this receipt:

Fort Wayne Electric Corporation *v.* Franklin Electric Light Co.

"Received from J. J. Burleigh, Cape Island Gas Co., notes aggregating $8,500—1/4 at 12 mos., 1/4 at 16 mos., 1/4 at 20 mos., and 1/4 at 24 mos. Consideration for assignment of Fort Wayne Electric Corporation claim against Franklin Electric Light Company."

An unexecuted assignment dated in June, 1897, states the terms of a proposed assignment at that time. It recites the consideration to be $8,500 in money, not in notes. The fact that the unexecuted assignment of June, calling for a cash consideration, antedates the receipt for notes in August, indicates a readjustment of the consideration so as to involve the credit for which ordinary business prudence would suggest security, and for this reason it is possible that an assignment of the legal title to the claim was not perfected. However that may be, the matter of assignment was permitted to rest in equitable right in the Cape Island Gas Company to enforce that for which it had given consideration. The legal title remained in the Fort Wayne Company when the existing decree was made, together with such a substantial interest as equity will afford by way of requiring notes to be paid before it will enforce a conveyance of the legal title. The fact that in subsequent litigation the Fort Wayne Company retained its legal title and control of the collection of its claim, indicates that it was intended that the legal title should not pass out of it.

Lastly, the attack upon the character of the gentleman selected as receiver has very clearly been shown to be unjust and wholly untrue. The event of the issue offered by the petition in this behalf proves that the court can rightly repose confidence in him.

Upon my consideration of these several questions, I have concluded to not only deny the relief specifically prayed for in the petition, but also to refuse permission to file a bill in the nature of a bill of review.